IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRUSTEES OF THE NATIONAL ELEVATOR INDUSTRY PENSION, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> GMS ELEVATOR SERVICES, INC., *et al.* <br><br> *Defendants.* | CIVIL ACTION <br> NO. 18-00538 |

**PAPPERT, J.**                                                                                                                   September 20, 2018

**<u>MEMORANDUM</u>**

The Trustees of the National Elevator Industry Pension, Health Benefit, Educational, Elevator Industry Work Preservations Funds, Elevator Constructors Annuity and 401(k) Retirement Plan Funds (collectively "Trustees") sued GMS Elevator Services, Gordon Simpkins and Pamela Simpkins seeking damages and equitable relief under the Employee Retirement Income Security Act ("ERISA") and the Labor-Management Relations Act ("LMRA"). Plaintiffs' claims arise from GMS's alleged failure to timely pay contributions and remit elective deferrals pursuant to a Collective Bargaining Agreement between GMS and the International Union of Elevator Constructors. Trustees are third party beneficiaries to the Collective Bargaining Agreement. Defendants neither pled nor otherwise defended the lawsuit, and the Clerk of Court entered default on April 20, 2018. (ECF No 3.) Before the Court is Plaintiffs' Motion for Default Judgment, (ECF No. 4), which the court grants for the reasons below.

I

A consequence of "the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citations and internal question marks omitted). The Court need not, however, accept the moving party's legal conclusions. *See id.*; *see also DirecTV, Inv. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10 A Wright & Miller, Federal Practice and Procedure, § 2688, at 58–59 (3d ed. 1998)).

Plaintiffs allege that Pamela Simpkins and Gordon Simpkins are owners of a business incorporated in California, GMS Elevator Services, Inc. ("GMS"). (Compl. ¶¶ 4–5, ECF No. 1.) Pamela Simpkins is the corporate secretary of GMS and owns 51% of the company. (*Id.* at ¶ 4; Mot. Default J. Ex. 6, at 13 ("Settlement Agreement").) Gordon Simpkins is the president of GMS and owns 49% of the company. (Compl. ¶ 5; Settlement Agreement at 13.) Pamela Simpkins, on behalf of GMS, signed a Collective Bargaining Agreement ("CBA") with the International Union of Elevator Constructors on July 29, 2014. (Compl. ¶ 6.) The 2014 CBA continued in force and effect until July 8, 2017 when the parties agreed to a successor CBA. (*Id.*)

The CBA requires that GMS adopts and agrees to be bound by the written terms of the Declarations of Trust of the National Elevator Industry Benefit Plans ("Declarations of Trust"). (Mot. Default J. Ex. 1 ¶ 7.) The CBA, combined with the Declarations of Trust, imposed a number of requirements on GMS, including reporting the number of hours worked by covered employees, paying contributions due to the funds and submitting elective deferrals on a timely basis. *See* (*id.* at ¶¶ 9–11).

Trustees are permitted to take action to collect all contributions due to the Trustees should GMS fail to pay. (*Id*. at 11.) In the event that GMS's delinquency in making payments resulted in filing the lawsuit, GMS would also be required to pay the Plaintiffs interest, liquidated damages, attorneys' fees and other costs. (*Id*.)

GMS employed covered individuals during the effective period of the CBA, July 29, 2014 to present. (*Id*. at ¶ 8.) For several months, GMS allegedly failed to pay contributions and remit elective deferrals to the Trustees. (*Id*. at ¶ 12.) Furthermore, the Trustees' auditor, Daniel A. Winters & Co., audited GMS for the period of January 1, 2014 to July 31, 2016 and found that GMS owed the Plaintiffs $90,161.62, plus additional interest and fees. (*Id*. at ¶ 14.) As a result of these violations, Trustees filed suit against GMS.

II

Rule 55(b)(2) authorizes a court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading.[1] *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). In such cases, three factors guide whether default judgment should be granted: (1) prejudice to the plaintiff if default judgment is denied; (2) whether the defendants appear to have a litigable defense; and (3) whether the defendants' delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

Application of the *Chamberlain* factors supports entry of default judgment. First, denying the motion will prejudice the Plaintiffs. "Considerable delays," especially

---

[1] The docket reflects that the Summons and Complaint were properly served upon GMS Elevator Services, Inc., Gordon Simpkins and Pamela Simpkins. *See* (Summons Returned Executed, ECF No. 2).

3

those that might "stretch on indefinitely," prejudice a plaintiff's ability to effectively pursue her claim. *Grove v. Rizzi 1857 S.P.A.*, No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013). Second, Defendants do not have a litigable defense. The court may presume that an absent defendant who has failed to answer has no meritorious defense, *see, e.g.*, *Doe v. Simone*, No. 12–5825, 2013 WL 3772532, at *5 (D.N.J. July 17, 2013), because "[i]t is not the court's responsibility to research the law and construct the parties' arguments for them." *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271–72 (E.D. Pa. 2014) (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)). Third, the defendant's failure or refusal to "engage[ ] in the litigation process and [to] offer[ ] no reason for this failure or refusal" may "qualif[y] as culpable conduct with respect to the entry of a default judgment." *Id.* at 272 (citing *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)).

The Defendants were served with the Complaint and put on notice of their obligation to file a responsive pleading. (ECF No. 2.) The "equities of the situation and the need for efficacious resolution of controversies" thus weigh in favor of entering default judgment. *Summit Tr. Co. v. Paul Ellis Inv. Assocs., LLC*, No. 12-6672, 2013 WL 3967602, at *4 (E.D. Pa. Aug. 2, 2013) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)).

III

A

Plaintiffs seek, pursuant to the LMRA and ERISA, unpaid contributions with accrued interest, elective referrals with accrued interest, liquidated damages, audit

costs, and attorneys' fees and costs for violations of the CBA. (Compl. ¶ 1.) Section 301 of the LMRA "creates a federal cause of action for breach of a [CBA]." *Bricklayers & Allied Craftworkers Local 1 of PA/DE v. Penn Valley Tile, Inc.*, 175 F. Supp. 3d 487, 493 (E.D. Pa. 2016) (citing 29 U.S.C. § 185); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.") (internal quotations omitted). Although the LMRA confers a federal cause of action, "liability is determined by an analysis of the CBA itself." *Bricklayers*, 175 F. Supp. 3d at 493 (citing *Rosen v. Hotel & Rest. Emp. & Bartenders Union of Phila., Bucks, Montgomery & Delaware Cntys., Pa.*, 637 F.2d 592, 597 (3d Cir. 1981)).

i

Plaintiffs' counsel has submitted certification for the amount due. (Mot. Default J. Ex. 4 ("Assessment Report"), ECF No. 4.) Plaintiffs seek $67,566.80 in unpaid contributions for the month of March 2018.[2] (Mot. Default J. at 2; Mot. Default J. Ex. 3, at 5 ("Betts Aff.").) Plaintiffs also seek interest on the unpaid contribution for March 2018 and untimely paid contributions for the months of November 2017, December 2017 and February 2018. (Mem. Supp. Mot. Default J. 5.) The Declarations of Trust provide that interest charges are calculated for all reported contributions at the Internal Revenue Service rate in effect during each month that a delinquency exists

---

[2] While the March 2018 contribution arose after the Complaint was filed on February 2, 2018, the Declarations of Trust provide that "[t]he Employer agrees that the Trustees may seek any additional contributions, interest, liquidated damages, costs and attorney's fees that come due the Trust Fund between the date the lawsuit is filed, and the date the Judgment is entered by the Court." (Compl. ¶ 11). Pursuant to the CBA, Plaintiff is entitled to seek unpaid contributions for March 2018.

5

and calculated on the outstanding balance of the sixteenth of each month whether the balance is comprised of principal, interest or both. (Compl. ¶ 17; Betts Aff. ¶ 14.) Calculating interest in accordance with this provision, Trustees seek $342.97 in interest for November 2017, $342.39 for December 2017, $384.15 for February 2018 and $564.22 for March 2018. (Assessment Report 4.) Accordingly, Plaintiffs are entitled to a total amount of $1,633.73 in interest for November 2017, December 2017, February 2018 and March 2018 as well as $67,566.80 in unpaid contributions from March 2018.

Plaintiffs next seek payment for amounts owed determined by a payroll audit. (Compl. ¶ 14.) The Plaintiffs performed an audit of GMS's records to determine the amount that GMS failed to pay in contributions. (*Id.*) The Trustees' auditor, Daniel A. Winters & Co. discovered that GMS owed unpaid contributions in the amount $84,923.95, (Assessment Report 3) plus interest of $5,237.67 for a total of $90,161.62. (Mem. Supp. Mot. Default J. 5; Assessment Report 3.) An additional $3,606.78 in interest has accrued since completion of the audit. (*Id.*) Furthermore, Plaintiffs also seek $9,969.00 in audit fees pursuant to the Declarations of Trust, which states that "in any case where the Trustees have claimed in a lawsuit any amount due as disclosed by the audit, [ ] the Employer shall be liable for all costs associated with the audit." (Compl. ¶ 13.) Plaintiffs are thus entitled to $9,969.00 in audit costs. (Assessment Report 5.) In total, GMS owes Plaintiffs $103,737.40 in audit contributions, accrued interest and audit fees. (*Id.*)

Plaintiffs also request payment for unremitted elective deferrals and interest. (Compl. ¶ 16.) GMS failed to pay elective deferrals required under the CBA for its employees for October 2015, February 2017 and September 2017 in the amount of

6

$585.10. (Mot. Default J. Ex. 5 at 14.) Plaintiffs seek interest and lost earnings on unremitted and late deferrals for the months of September 2012, March to May 2014, July 2014, and August 2015 to September 2017. (Compl. ¶ 16.) Calculating interest in accordance with the CBA, GMS owes Plaintiffs $39,175.17 in interest on unpaid and untimely paid elective deferrals. (Mot. Default J. Ex. 5, at 11–14.)

Plaintiffs seek $30,615.17 in liquidated damages. (Compl. ¶ 17.) The Declarations of Trust provide that GMS is obligated to pay "liquidated damages in the amount of twenty percent (20%) of the contributions due at the time the lawsuit is filed" when GMS fails to pay the amounts owed on time. (Compl. ¶ 11.) Section 1132 of ERISA provides that a court may award liquidated damages provided for under the plan in an amount not in excess of twenty (20) percent. *See* 29 U.S.C.A. § 1132. Pursuant to the CBA provision and in accordance with ERISA, GMS is obligated to pay liquidated damages in the amount of 20% for the unremitted elective deferrals, contributions for March 2018 and contributions uncovered in the audit.[3] *See* (Mot. Default J. 7; Betts Aff. ¶ 21). Plaintiffs are thus entitled to $30,615.17 in liquidated damages.

Plaintiffs seek $8,610.75 in attorneys' fees expended in bringing the lawsuit. (Compl. ¶ 17.) The Declarations of Trust state that "[a]n employer who fails to pay the amounts required by the [CBA] on time shall be obligated to pay … necessary costs of collection incurred by the Funds, including, but not limited to, reasonable attorney's fees and court costs." Pursuant to this provision, Plaintiffs are entitled to $790 in costs,

---

[3] Twenty percent of the unremitted elective deferrals is $117.02, twenty percent of the March 2018 contributions is $13,513.36 and twenty percent of the contributions uncovered in the audit is $16,984.79. The sum of these three is $30,615.17. *See* (Assessment Report 7).

7

which includes the $400 filing fee for the Complaint and $390.00 for service on Defendants. (Mot. Att'ys Fees ¶ 8.)

In determining reasonable attorneys' fees, the Court applies the lodestar calculation. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Court multiplies the hourly rate by the number of hours to obtain the lodestar which is presumed to be the reasonable fee. The Court "may not award less in fees than requested unless the opposing party makes specific objections to the fee request." *United States v. Eleven Vehicles, Their Equipment and Accessories*, 200 F.3d 203, 212 (3d Cir. 2000); *see also Thompson v. Cent. Sec. Agency, Inc.,* Civ. A. No. 98-2474, 1999 WL 257660, at *1, 2 (E.D. Pa. Apr. 29, 1999) (applying prohibition on *sua sponte* reductions in attorneys' fee requests under ERISA).

Plaintiffs' counsel submitted specific time records in quarter hour increments detailing the work conducted on this proceeding, as well as a detailed description of the service provided. (Mot. Default J., Ex. 8.) Counsel expended 32.25 hours in the case on behalf of Plaintiffs. (*Id*. at 3.) The Court accepts Plaintiffs' account of the time expended on these matters and Plaintiffs are entitled to recover for the hours requested.

The Court also finds that the attorneys' fees are reasonable in light of the nature of the case and the services rendered. A reasonable hourly rate "is calculated according to the prevailing market rates in the community." *Washington v. Phila. Cty. Ct. Com. Pl.,* 89 F.3d 1031, 1034 (3d Cir. 1996). "The starting point of determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." *Pub. Interest*

*Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995); *see also Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001). Here, the firm O'Donoghue & O'Donoghue negotiated an hourly fee of $267.00 with Plaintiffs. (Mot. Att'ys Fees ¶ 7.) That amount was "within the usual and customary time spent by an attorney of this type of case." *See* (*id.* at ¶ 6); *see also Laborers Int'l Union of N. Am. Local No. 199 Welfare, Pension, Apprenticeship & Training, Annuity v. Ramco Sols.*, No. CIV. 11-4976 RBK/JS, 2013 WL 4517935, at *5 (D.N.J. Aug. 26, 2013) (finding $300 per hour is reasonable in ERISA matters).

The total amount awarded to Plaintiffs, including unpaid contributions ($67,566.80), interest on late contributions ($1,633.73), amounts determined by the payroll audit ($103,737.40), unremitted elective deferrals ($585.10), interest on late or unremitted elective deferrals ($39,175.17), liquidated damages ($30,615.17), attorneys' fees ($8,610.75) and costs ($790.00) is $252,714.12. (Assessment Report 7.)

ii

Finally, Plaintiffs also seek injunctive relief. Trustees request that GMS report its monthly contributions on or before the due date and pay the corresponding contributions on or before the due date, as well as report its elective deferrals on or before the due date and remit the corresponding elective deferrals on or before the due date. Trustees also request that GMS submit report forms and corresponding elective deferrals, interest and lost earnings for the weeks of June 6, 2016; September 5, 2016, August 7, 2017 and January 8, 2018 through March 19, 2018. It is appropriate for the court to grant the equitable relief sought by Trustees under 29 U.S.C. § 1132(g)(2)(E). Pursuant to the CBA and the Declarations of Trust, the Court finds that Trustees must

report employee hours and pay contributions to the Trustees on time for employee benefits, and submit all outstanding forms, deferrals, and interest and lost earnings to Trustees.

B

Plaintiffs seek to hold Pamela and Gordon Simpkins personally liable for all damages. Section 409 imposes personal liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." 29 U.S.C. § 1109(a). In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person . . . adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000).

Pursuant to 29 U.S.C. § 1002(21)(A)(i), the relevant analysis concerning whether the Simpkins acted as fiduciaries requires determining (1) whether the Simpkins' authority or control concerned plan assets—specifically, whether the unpaid contributions are plan assets—and (2) whether the Simpkins either exercised discretionary authority or control in the management of the plan or if they exercised any authority or control over the management or disposition of the plan's assets. 29 U.S.C. § 1002(21)(A); *Trustees of the Nat. Elevator Indus. Pension, Health Ben., Educ., Elevator Indus. Work Pres. Funds v. Gateway Elevator Inc.*, No. CIV.A. 09-4206, 2011 WL 2462027, at *5 (E.D. Pa. June 21, 2011).

First, the unpaid contributions and unremitted elective referrals are plan assets under ERISA. The CBA establishes that GMS's delinquent contributions and

unremitted elective deferrals were plan assets because the agreement provides that "[t]itle to all the monies paid into and/or due and owing to the [trust funds] shall vest in and remain exclusively in the Trustees of said Funds, respectively." (Mot. Default J. Ex. 1 ¶ 7.) Such language in the CBA supports the finding that the delinquent contributions are plan assets. *See Gateway Elevator*, 2011 WL 2462027, at *5 (citing *Galgay v. Gangloff,* 677 F. Supp. 295, 301 (M.D. Pa. 1987), *aff'd*, 932 F.2d 959 (3d Cir.1991)) (finding "clear and undisputed" the language of the agreement, which stated, "Title to all the monies paid into and/or due and owing said fund shall be vested in and remain exclusively in the trustees of the fund," "makes any delinquent employer contributions vested assets of the plaintiff fund").

Second, both Gordon and Pamela Simpkins exercised authority and control over plan assets. Plaintiffs allege that Pamela and Gordon Simpkins "determined the total amount of the employer's monthly contributions and retained a portion or all of the employer's payment that should have been sent to the Plaintiff's Funds on behalf of [their] employees[.]" (Compl. ¶¶ 21, 34.) Moreover, Pamela and Gordon Simpkins acknowledged that they were fiduciaries with respect to the plan. They both signed a settlement agreement in 2015, which states that Pamela and Gordon Simpkins, as "owner[s] and officer[s] of GMS Elevator Services, Inc., acknowledge[] [their] status as [] fiduciar[ies] of GMS Elevator Services, Inc. within the meaning of [ERISA] such that if the NEI Plans need to institute a lawsuit to collect the outstanding contributions, [they] will be personally liable for any balance due in this Agreement as well as any additional contributions that become due." (Settlement Agreement 9–10.)

Finally, because Plaintiffs have alleged that Gordon and Pamela Simpkins failed to timely report and make contributions, they have breached their fiduciary duties. *See Gateway Elevator*, 2011 WL 2462027, at \*7. Therefore, both Gordon and Pamela Simpkins are jointly and severally liable for the damages.

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.